No. 29,372.

THE STATE OF KANSAS, ex rel. JOHN A. ETLING, County Attorney, *Appellee,* v. O. V. RAY et al., as the Board of School District No. 40, *Appellants.*

(288 Pac. 1055.)

Opinion filed June 7, 1930.

*A. L. Moffat,* of Kinsley, for the appellants.
*John A. Etling,* of Kinsley, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of mandamus to compel a school-district board to call an election to determine whether the school district should become attached to a union district. The writ was granted, and the board appeals.

The proceeding was initiated by electors of school district No. 40, who, on September 12, 1929, petitioned that their district be attached to union district No. 35, pursuant to R. S. 72-906 to 72-910. The petition was favorably acted on by the board of district 35, which voted to receive district 40, and so notified the clerk of the board of district 40 on September 13, 1929. The board of district 40 refused, however, to call an election for determination of the question whether the district should be attached to district 35. The refusal was based on the fact that the petition to the board of district 35 was not a legal petition.

Before incorporation in the Revised Statutes, the statute govern-

ing the proceedings was chapter 230 of the Laws of 1921, which contained five sections reading as follows:

"SECTION 1. That any school district in the state of Kansas, adjacent or contiguous to a consolidated or union district already established under the provisions of chapter 275 of the Session Laws of the state of Kansas for 1911, shall become a part of said consolidated or union district upon complying with the following requirements: It shall present a petition signed by at least fifty-one per cent of the qualified electors residing in said district, to the district board of the consolidated or union district; which petition shall state the indebtedness of the petitioning district and the indebtedness of the consolidated or union district; and shall agree that if its petition is granted it will assume its proportionate share of the existing indebtedness of the consolidated or union district.

"SEC. 2. That upon receipt of the petition provided for in section 1 of this act, the board of the consolidated or union district shall by vote determine whether it desires to receive the petitioning district into the consolidated or union district, and transmit its action to the clerk of the district board of the petitioning district. If said notice be favorable, the district board of the petitioning district shall upon receipt thereof call an election in said district, submitting to the qualified electors therein, the proposition of annexing said district to the consolidated or union district already existing, and such submission shall carry with it the proposition of the petitioning district assuming its proportionate share of the indebtedness already existing in said consolidated or union district, so that an affirmative vote upon the proposition of annexation shall be considered as a vote in favor of assuming its share of the existing indebtedness. The proportion of said indebtedness to be assumed by the petitioning district shall be based upon the ratio between the total taxable valuation of the petitioning district and the total taxable valuation of the consolidated or union district. The election above provided for shall be called and conducted in the manner provided for in the General Statutes for conducting bond elections in school districts.

"SEC. 3. That a majority of the votes cast at said election shall be sufficient to carry the proposition. The vote at said election shall be by ballot, which ballots shall read 'for annexation and assumption of proportionate share of indebtedness,' or 'against annexation and assuming proportionate share of indebtedness.'

"SEC. 4. That upon such proposition being carried the clerk of the petitioning district shall in writing notify the county superintendent and the district board of the consolidated or union district of such action, and thereupon and thereafter said petitioning district shall be and become a part and portion of said consolidated or union district, with all the rights, privileges, duties and obligations of said consolidated or union district, and shall be liable for its proportionate share of the existing indebtedness of said district.

"SEC. 5. That all property belonging to the petitioning district shall become a part of, and belong to, the consolidated or union district, and the debt of the petitioning district, as stated in the petition, shall be assumed by, and become a part of the indebtedness of the consolidated or union district."

The petition of the electors of district 40 stated that their district had no indebtedness, and that district 35 had no indebtedness. In the answer to the alternative writ the board of district 40 stated that when the electors' petition was presented, district 40 was indebted in the following items:

Contract with school teacher to teach eight months' school, commencing in September, 1929...................................... $660.00
Account at a drug store............................................ 8.25
Telephone bill ................................................... 4.00

The answer also alleged that district 35 was indebted in the following items:

Salary of ten teachers and a janitor for the school year 1929-'30.... $9,500.00
Obligation to pay bus drivers and other expense items, amounts not stated.

The state moved for judgment in its favor, on the ground the answer stated no defense.

The board contends the indebtedness of each district described in the answer was the kind of indebtedness which should have been stated in the electors' petition; the petitioning district was required to assume its proportionate share of the indebtedness of district 35; the debt of the petitioning district, as stated in the petition, would become a part of the indebtedness of the union district; and it was indispensable that the amounts be stated. The board also contends district 40 would be disorganized by attachment to district 35, district 40 could not levy or collect taxes or sue or be sued, creditors of district 40 could not be paid, and creditors would be remediless.

The answer did not allege that either district had any bonded debt, or debt consisting of outstanding orders or warrants for the redemption of which no funds had been provided, and the brief for the board concedes it should be presumed tax levies would be sufficient to defray all current expenses of both districts.

The indebtedness described in the answer consists of nothing but ordinary items of expense of maintaining schools—school supplies, telephone bill, salaries of teachers and wages of bus drivers, payable as they accrue on accustomed pay days from current revenues duly provided. With every engagement of each district duly provided for as it matured, by money in the hands of the treasurer or available to him, there would be as a practical matter nothing to assume so far as current expenses were concerned.

In this instance the case was decided by the district court on

November 7, 1929. Suppose there had been no litigation, an election had been called in district 40, and the election had occurred on November 7. A statement of indebtedness embodied in the petition of September 12 would have given no information to a voter seeking to know what district 40 would assume, because in the ordinary course of business the September and October bills would have been paid.

It will be observed at a glance that the statute lacks details essential to carrying it into effect. If district 40 were attached to district 35, district 40 would go out of existence as a separate corporation. The territory of district 35 would be enlarged, and its boundary would be changed. A reorganization of district 35 to that extent would be effected; and there is no provision in the statute for bringing the enlarged district on the records so that future tax levies might be properly made and extended. For the duty of the county superintendent in this respect we must look to section 4 of chapter 305 of the Laws of 1901, and the fact is, the statute of 1921 is merely a supplement to chapter 275 of the Laws of 1911, which was merely amendatory of and supplemental to the statute of 1901.

The statute of 1901 authorized independent school districts to consolidate and form a new union district. The idea was developed by a statute of 1903, which authorized a district adjacent to a union district to disorganize and to become attached to a union district by order of the county superintendent. The statute of 1911 was of the same general type. The statute of 1921 permitted the matter of annexation to be determined by electors of the petitioning district and the board of the union district.

The act of 1901 dealt specifically with bonded indebtedness of the several districts uniting to form a union district. Such indebtedness continued to attach to the territory of the old districts, and provision was made for tax levies to take care of such indebtedness. Provision was also made for payment of the "floating indebtedness" of the disorganized districts by application of "assets and property" to discharge such indebtedness, the surplus to be applied on bonded indebtedness.

The legislature of 1901 passed another act providing for disorganization of certain school districts and annexation of the disorganized districts to other districts. The act contained a provision in effect defining floating indebtedness as consisting of school orders,

and the term is elsewhere used as including warrants and orders. The act also contained a provision throwing light on what the assets of a disorganized district may be:

"SEC. 8. If at the time of the disorganization of any school district as herein provided for, such district shall have in the hands of its treasurer or of the county treasurer of the county moneys belonging to it, or any unpaid taxes levied for the payment of its indebtedness, bonded or floating, such money shall be first applied to its indebtedness, floating and bonded; . . ." (Laws 1901, ch. 307.)

It would be a bootless task to go further into the confused mass of legislation relating to the subject of combining and disorganizing school districts. But so far as consistent purpose is discernible it is clear that current expenses, for payment of which funds have been provided, have not been regarded as indebtedness requiring special legislative attention in connection with disorganization.

Nobody needs to be informed that if annexation takes place under the act of 1921 during a school year there will be current expenses which will vary in amount from month to month. On disorganization a district does not forfeit any of the fund already specifically provided to pay those expenses; and because there is a fund so provided, whether in the hands of the district treasurer, or the county treasurer, or available in unpaid taxes, they are not important in considering the financial consequences of consolidation. Assumption and apportionment of bonded debt attaching to territory is quite another matter. The board of district 35 would want to know what the burden on the new enlarged district resulting from annexation would be, and the electors of district 40 would want to know how heavily district 35 was burdened before assuming their proportionate share of the debt. Therefore this court concurs in the judgment of the district court that the petition of the electors of district 35 was not defective.

The judgment of the district court is affirmed.

HARVEY, J., dissenting.